ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone:   (702) 634-5000
Facsimile:   (702) 380-8572
Email: ariel.stern@akerman.com
Email: donna.wittig@akerman.com

*Attorneys for defendant Citibank, N.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| INJURYLOANS.COM, LLC, a Nevada entity; ADAM STOKES, an individual, <br><br> Plaintiff, <br><br> v. <br><br> SERGIO BUENROSTRO, an individual; SANDRA MARTINEZ, an individual; CITIBANK, N.A., an entity; S&S MARKETING CONSULTING, LLC, a Nevada limited liability company. <br><br> Defendants. | Case No.:   2:18-cv-01926-GMN-VCF <br><br> **CITIBANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| CITIBANK, N.A., <br><br> Cross-Claimant, <br><br> v. <br><br> SERGIO BUENROSTRO, <br><br> Cross Defendant. | |

52980724;6

1

CITIBANK, N.A.,

        Third-Party Plaintiff,

v.

S&S MARKETING CONSULTING, LLC

        Third-Party Defendant.

Defendant Citibank, N.A. moves to dismiss plaintiffs Injuryloans.com, LLC and Adam Stokes claims against Citi for negligence/negligence per se, conversion, violations of the Uniform Commercial Code (**UCC**), and money had and received under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, along with plaintiffs' prayer for punitive damages. Citi also asks the court to strike, under Fed. R. Civ. P. 12(f), plaintiffs' claim for money had and receive on a procedural basis because plaintiffs never obtained leave to add that claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case involves plaintiffs' allegations that, among other things, co-defendant Sergio Buenrostro committed certain fraudulent actions relating to his business, S&S Marketing Consultants, via a business banking account opened at Citi. Plaintiffs allege Citi is somehow liable to plaintiffs because Buenrostro used a Citi business account to further his purported fraud. Plaintiffs bring claims against Citi for negligence, violations of the UCC, conversion, and money had and received. Each claim fails.

First, Plaintiffs cannot maintain a negligence action against Citi. Plaintiffs were not customers of Citi, and therefore Citi owed no duties to them. The overwhelming majority of jurisdictions find banks owe no duties to non-customers. Additionally, plaintiffs' negligence claim further rests on purported violations of various federal statutes, which case law unanimously finds cannot support a private right of action in negligence. Nor can plaintiffs' asserted UCC violations support either a negligence action or independent claim for relief, as plaintiffs improperly attempt to interject themselves into the banking relationship between Buenrostro, S&S and Citi.

…

2

52980724;6

Second, plaintiffs lack standing to assert conversion against Citi. The UCC allows a claim of conversion to be asserted against a bank only by a plaintiff who received delivery of the check. Plaintiffs' allegations are clear that not only did they never receive delivery of the check, they repeatedly deny Buenrostro, who plaintiffs allege did receive the checks, is an agent of theirs.

Third, plaintiffs' claim for money had and received was raised for the first time in reply to their motion for leave to amend. Plaintiffs never obtained permission to amend their complaint to assert this claim. The claim should be stricken. It also fails on its merits.

Finally, plaintiffs seek punitive damages under their claims for conversion and money had and received. Neither claim can support a request for punitive damages.

## II.   BACKGROUND

### A.   Relevant Procedural Background

Plaintiffs filed their lawsuit October 5, 2018. ECF No. 1. The sole cause of action asserted against Citi was negligence. *Id.* It was not until February 14, 2020, when plaintiffs first moved for leave to amend the complaint. ECF No. 66. In their motion, plaintiffs sought leave to add a claim for conversion and violations of the UCC against Citi. *Id.* In their motion, plaintiffs failed to address in any way the substance of their new claims, instead limiting their argument to lack of prejudice or undue delay and good faith. Citi opposed plaintiffs' motion, arguing, among other arguments, futility of the proposed amendment. ECF No. 77. In reply, plaintiffs for the first time added a new claim for money had and received. ECF Nos. 91, 92.

Magistrate judge Ferenbach granted plaintiffs' motion on procedural grounds, finding Citi would not be prejudiced by the amendment and amendment was not sought in bad faith. ECF No. 105, at 2-3. The court did not address Citi's futility arguments. *See generally*, ECF No. 105. Nor did the court allow plaintiffs' leave to file their newly-asserted claim for money had and received. *Id.* Rather, the court granted plaintiffs' motion by referencing ECF No. 65, which the amended complaint attached thereto did not include the claim for money had and received. *Compare* ECF No. 65 *with* ECF Nos. 91, 92.

…

…

3

52980724;6

**B.     Relevant Substantive Allegations/Background**

   **1.     Allegations Common to All Claims**

      **a.     The Parties**

Stokes is an attorney and business owner who owns and operates, among other businesses, Injuryloans.com, LLC.  ECF 110, FAC, ¶ 14.  Injuryloans finances plaintiffs in personal injury lawsuits in exchange for reimbursement with interest at the conclusion of the case.  *Id.* ¶ 15. Buenrostro was a former employee of Stokes until sometime in 2017.  *Id.* ¶¶ 16, 19.

      **b.     Buenrostro's Alleged Fraudulent Scheme**

In 2017, Stokes allegedly suffered a debilitating brain injury.  *Id.* ¶ 18.  While Stokes was purportedly incapacitated, Buenrostro "sold" loans belonging to Injuryloans to third parties, intercepted checks payable to Injuryloans, and deposited them with Citi.  *Id.* ¶ 21.  Buenrostro represented to the third parties he was authorized to collect monies on behalf of Injuryloans, which plaintiffs say is untrue.  *Id.* ¶ 22.  To facilitate the alleged fraud, Buenrostro, among other actions, (1) unilaterally drafted a contract between himself and Stokes by forging Stokes signature on the agreement, (2) opened a company named S&S Marketing Consulting, LLC and submitted a fictitious firm name filing in Clark County stating S&S does business as "Injury Loans," (3) committed bank fraud by opening up a business bank account with Citi under S&S's name and depositing checks made payable to Injuryloans, and (4) represented to third parties plaintiffs sanctioned his activities. *Id.* ¶ 24.  Buenrostro was not permitted to sell loans without Stokes' consent and knowledge; nor was Buenrostro an independent contractor.  *Id.* ¶¶ 32, 42, 48, 58, 60.  According to plaintiffs, "Buenrostro would never be retained by Stokes to collect money or conduct business on the Plaintiffs' behalf because he lacks education and even a college degree."  *Id.* ¶ 46.  In short, plaintiffs allege "Buenrostro was not entitled to any proceeds or payments from any of the loans."  *Id.* ¶ 50.

      **c.     Citi's Purported Involvement**

Stokes alleges he learned of Buenrostro's scheme after coming into possession of a forged document purporting to be a Citi "signature" card bearing Stokes signature.  *Id.* ¶ 25.  Plaintiffs allege Stokes took the card to a local Citi branch and learned from Citi the document was a "fugitive" document "that not one person at the local branch had ever seen before . . . [and it was]

4

never submitted to the bank." *Id.* ¶¶ 26, 27, 29.[1] Upon being presented with the "fugitive" document, plaintiffs allege Citi had an obligation to transmit the document and account to Citi's corporate office, or otherwise report the incident to law enforcement or to an administrative or banking agency. *Id.* ¶ 30. Plaintiffs also allege Citi sent Stokes a text message. *Id.* ¶¶ 56, 57.

### 2.     Plaintiffs' Claims Against Citi

Based on the foregoing, plaintiffs assert six claims against Citi, only four of which are substantive:[2] (1) negligence/negligence per se, FAC ¶¶ 66-94; (2) conversion, FAC ¶¶ 176-184; (3) violations of UCC, FAC ¶¶ 185-189; and (4) money had and received, FAC ¶¶ 190-196.

#### a.     Plaintiffs' Negligence/Negligence Per Se & UCC Violations Claims

For their negligence claim, plaintiffs allege Citi owed duties to plaintiffs that included checking customer identification and not accepting checks made payable to anon-customer without properly identifying an endorsement from the payee. FAC at ¶ 67. Plaintiffs allege Citi had nothing on file linking the S&S business account to Injuryloans. *Id.* ¶ 68. According to plaintiffs, Citi allegedly "failed to exercise due diligence in allowing S&S to open a bank account at Citibank with a fictitious firm name 'Injury Loans.'" *Id.* ¶ 69. Citi further allegedly failed to, among other things, understand S&S's business purpose, reject checks made payable to Injuryloans, and deem S&S's account "high risk" to subject the account to "a much greater amount of monitoring and scrutiny." *Id.* ¶¶ 70, 71. This greater level of supposed scrutiny is alleged to derive from obligations Citi owes under the Bank Secrecy Act (**BSA**), *id.* ¶¶ 72-74, 77, 80-81, the USA Patriot Act (**Patriot Act**), *id.* ¶¶ 75, 86, BSA/Money Laundering Examination Manual, *id.* ¶¶ 76, 79, Know Your Customer (**KYC**) and Customer Due Diligence (**CDD**), *id.* ¶¶ 78, 80-82, 83-85, 87. Plaintiffs also allege Citi

---

[1] In plaintiffs' original complaint, they allege "Stokes took the forged Citibank form document to the local branch of the bank (at "The Lakes"), approximately a couple weeks" before filing the complaint. ECF No. 1, ¶ 26. Plaintiffs omit this timing in their amended complaint.

[2] The two "non-substantive" claims plaintiffs assert against Citi are (1) injunctive relief, which is not a claim but a remedy, *Tillman v. Quality Loan Serv. Corp.*, No. 2:12–CV–346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"), and (2) declaratory relief, asking for a declaration that "Plaintiffs are not bound by any fraudulent bank account that they neither opened, nor authorized, nor approved, nor signed. The court should declare invalid any fictitious banking documents and/or checks with forgeries of Stokes' signature by Buenrostro." FAC ¶ 173. The bank account opened by Buenrostro with Citi has since closed. And, there have been no checks with a forged Stokes endorsement.

52980724;6

owed plaintiffs general duties of care in negligence, generally, and under Nevada's UCC, codified at NRS §§ 104.3110, .3202, and .3306. *Id.* ¶¶ 88-90.

Plaintiffs also assert a separate cause of action titled, violations of UCC, relying on NRS §§ 104.3110, .3202, .3305 and .3306. *Id.* ¶ 187. Under this claim, plaintiffs allege they "were the rightful owners and payees of checks deposited into the Citibank account for S&S." *Id.* ¶ 186.

### b.   Plaintiffs' Conversion Claim against Citi

Plaintiffs assert their conversion claim against Citi, Buenrostro, S&S and Sandra Martinez.[3] As against Citi, plaintiffs allege Citi negotiated certain checks without plaintiffs' authorization, and that '[p]ursuant to NRS 104.3420, Citibank committed a distinct act of dominion wrongfully exerted over plaintiffs' property by depositing the checks made payable to plaintiffs into the account of an [sic] another." FAC ¶¶ 180, 181. For this, plaintiffs request punitive damages. *Id.* ¶ 184.

### c.   Plaintiffs' Claim for Money Had and Received

For this claim asserted for the first time in their reply to their motion for leave to amend, plaintiffs assert Citi accepted checks for deposit with forged endorsements, Citi acquired no title to the checks, and Citi collected proceeds from the drawee bank. FAC ¶¶ 191-193. Plaintiffs demand punitive damages on this claim. *Id.* at ¶ 196.

### III.   LEGAL STANDARD

**A.   Motion to Dismiss Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory, or where it presents a cognizable legal theory yet fails to plead essential facts to support the theory. *Neitzke v.*

---

[3] Martinez is Buenrostro's wife whose name was listed as a signer on the S&S account at Citi.

52980724;6

*Williams*, 490 U.S. 319, 326 (1989); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts are not bound by, nor will inferences of truthfulness be given to, unreasonable inferences and unwarranted deductions of fact. *See, e.g., Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *W. Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981). The purpose of a Rule 12(b)(6) motion to dismiss is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

**B.      Motion to Strike Standard**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may act, "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).

## IV.     ARGUMENT

**A.      Plaintiffs' Negligence Claim Fails Because Citi Owes No Duty to Plaintiffs**

To state a claim for negligence, a plaintiff must plead: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages. *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 221 P.3d 1276, 1280 (2009).

**1.      Plaintiffs Common Law Negligence Claim Fails for Lack of Duty Owed**

In determining whether a duty exists, courts rather than juries possess "the ultimate responsibility to define the scope of duty in relation to particular circumstances and to define the legal standard of reasonable conduct in light of the apparent risk." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98, 133 (1998).

Courts throughout this country, including courts within the Ninth Circuit, find a bank owes no duties to non-customers. This rule applies where a bank is alleged to have allowed a customer to perpetrate a fraud on a non-customer, failed to verify deposited checks, failed to investigate the purposes for which a customer uses an account, as plaintiffs allege here against Citi. *See e.g.,*

7

52980724;6

*Sliders Trading Co. LLC v. Wells Fargo Bank, N.A.*, No. 17-cv-04930-LB, 2017 WL 6539843 (Dec. 18, 2017) (failing to allow negligence claim to proceed where non-customer plaintiff alleged bank "should have notice red flags surrounding the transactions"); *Towne Auto Sales, LLC v. Tobsal Corp.*, No. 1:16-cv-02739, 2017 WL 5467012 (N.D. Ohio Nov. 14, 2017) ("Ohio follows the prevailing rule that a bank owes no duty to a person who is neither a customer nor an account-holder."); *Ramsey v. Hancock*, 79 P.3d 423 (Ct. App. Utah 2003) (finding no duty of care owed to non-customer payee of checks that were deposited by customer of the bank); *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397 (7th Cir. 2004) (finding noncustomer could not bring negligence or conversion claim against bank, stating "[t]asking banks to read every check to make sure that the payee's identity was consistent with the character of the account would impose an unreasonable burden, and so the failure to perform the task would not be negligence even if banks did have a general duty to case to noncustomers (which, to repeat, do not)."); *Volpe v. Fleet Nat'l Bank*, 710 A.2d 661, 664 (R.I. 1998) (finding non-customer of bank was owed no duty of care by bank even where bank is alleged to have failed to determine whether a check bears a genuine signature); *Miller-Rogaska, Inc. v. Bank One*, 931 S.W.2d 665 (Tex. App. 1996) (finding bank owed no duty to non-customer); *Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051, 1076, 46 Cal. Rptr. 2d 309, 325 (1995) (holding a bank is liable only to its customer for alleged mishandling of the customer's account); *McCallum v. Rizzo*, No. 942878, 1995 WL 1146812, *2 (Mass. Super. Ct. Oct. 13, 1995) ("The mere fact that a bank account can be used in perpetrating a fraud does not mean that banks have a duty to persons other than their own customers."); *Schleicher v. Western State Bank of Devils Lake*, 314 N.W.2d 293, 297 (N.D. 1982) (refusing to find a duty owed to a noncustomer in common law negligence despite the UCC creating no duties where bank failed to discovery forgery before paying check); *Anschutz v. Central Nat'l Bank of Columbus*, 112 N.W.2d 545 (Neb. 1961) (finding no duties owed by bank to a non-customer).

Plaintiffs' negligence claim should be dismissed in its entirety and with prejudice.

**2.      Federal Banking Statutes Do Not Create a Duty**

To the extent plaintiffs' negligence claim does not fail under the general rule that banks owe no duties to non-customers, plaintiffs' negligence claim fails because their entire claim rests on

8

allegations that neither create a duty nor give rise to a private right of action in negligence under the BSA or related banking rules. "The BSA requires financial institutions and other businesses to file certain reports or records that are likely to have a 'high degree of usefulness in criminal, tax, or regulatory investigations or proceeds.'" *Venture General Agency v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, *6 (Aug. 8, 2019). "The Patriot Act amended the BSA to require financial institutions to establish anti-money laundering programs including the development of internal policies, procedures, and controls," among other requirements. *Id.* (citation omitted). The BSA also "requires banks to implement 'KYC/CIP' . . . policies and procedures to prevent fraudulent and otherwise criminal activity." *Id.* (citation omitted).

"While these statutes provide for civil and criminal penalties, a defendant[ bank]'s liability for failure to comply is to the United States government." *Id.* at *7. "For this reason, courts are unanimous in holding that there is no private right of action under the BSA or Patriot Act." *Id.* (collecting cases). "Further, as there is no private right of action, there can be no duty of care arising out of the BSA's monitoring requirements." *Id.* (collecting cases).[4]

Because plaintiffs cannot support a duty owed them under the BSA, or their related allegations concerning customer due diligence, Patriot Act, KYC, CIP, CDD and money laundering, their negligence and negligence per se claim must be dismissed with prejudice to the extent based on these federal statutes and rules.

---

[4] *See e.g.*, *Lusk v. Kellogg*, No. SACV 11-00087 JVS, 2011 WL 13225140, at *6 (C.D. Cal. Aug. 10, 2011) (where plaintiff argued he was "not asserting a private right of action under the Bank Secrecy Act, but rather is using ongoing violations of federal law as evidence of negligence," the court dismissed the claim with prejudice, finding "[t]he Bank Secrecy Act creates neither a private right action nor any parallel duty to a bank customer."); *Ferring v. Bank of Am. NA*, No. CV-15-01168-PHX-GMS, 2016 WL 407315, at *4 (D. Ariz. Feb. 3, 2016) ("[T]he BSA does not authorize a private right of action for its violation," and plaintiff therefore "cannot rely on the BSA ... to establish a duty."); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. No. CIV–10–651–D, 2011 WL 3329181, at *8 (W.D. Okla. Aug. 2, 2011) ("Courts have repeatedly rejected negligence claims based on a bank's duty arising under the [Bank Secrecy] Act, concluding a bank's duty created by the Act is owned only to the government and not to private parties."); *Marlin v. Moody Nat'l Bank, N.A.*, No. H–04–4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) ("The obligation under [the BSA] is to the government rather than some remote victim. The [bank's] obligation is not to roam through its customers looking for crooks and terrorists. By that act, banks do not become guarantors of the integrity of the deals of their customers. It does not create a private right of action and, therefore, does not establish a standard of care."), aff'd, 248 Fed. App'x 534 (5th Cir. 2007).

9

### 3. The UCC Provisions Do Not Save Plaintiffs' Negligence Claim or Support an Independent Claim for Relief

Plaintiffs appear to attempt a work-around of the general rule banks owe no duties to non-customers by including various references to UCC provisions they assert create the required duty. But the cited provisions create no such duty. Nor do they support an independent claim against Citi.

#### a. NRS 104.3110

*First*, plaintiffs cite NRS 104.3110, titled "Identification of person to whom instrument is payable." FAC ¶¶ 90, 187. This statute states a negotiable instrument is payable to the person intended by the signer, even if named incorrectly. The purpose of this statute is to ensure a check is payable to the party to whom the maker intended to check to be paid. *First Nat. Bank of Nev. v. Dean Witter & Co.*, 84 Nev. 303, 306, 440 P.2d 391, 394 (1968) ("It is only when the maker of the check knows that the payee is fictitious or when the maker intends that the payee have no interest in the check, that the instrument is considered made to a fictitious payee."). It imposes no obligation or duty on a bank, like Citi. To the extent plaintiffs' complain that the makers of the checks were coerced or tricked by Buenrostro into paying Injuryloans, plaintiffs' real complaint is a claim for interference with economic advantage or some other claim against the liable party, Buenrostro. *Midwest Feeders, Inc. v. Bank of Franklin*, 114 F. Supp. 3d 419, 424 (S.D. Miss. 2015) (explaining an interest in the funds of a check is different than an interest in the check). Citi has no legal liability for Buenrostro's purported fraud in tricking plaintiffs' supposed clients into paying Buenrostro instead of plaintiffs directly, as that fraud occurred extraneous to the negotiable instruments on which plaintiffs are attempting to sue. *See McCallum*, 1995 WL 1146812, at *2 ("The mere fact that a bank account can be used in perpetrating a fraud does not mean that banks have a duty to persons other than their own customers.").

#### b. NRS 104.3202

*Second*, plaintiffs cite NRS 104.3202, titled "Negotiation subject to rescission." FAC ¶¶ 90, 187. This statute outlines the circumstances when the negotiation of an instrument is effective. It expressly provides "[n]egotiation is effective even if obtained . . . [b]y fraud, duress or mistake." NRS 104.3202(1)(b). This statute is more appropriately used in Cit's defense than to somehow

52980724;6

support a negligence or UCC violation claim against Citi.  This statute highlights the flawed nature of plaintiffs' theory in trying to hold Citi liable for purported fraud that took place entirely outside the realm of anything involving Citi or the negotiable instruments on which plaintiffs are trying to now recover.  Plaintiffs' allegations demonstrate NRS 104.3202 supports Citi's defense.  The amended complaint alleges Buenrostro fraudulently obtained payments from third parties that really belonged to Injuryloans.  Buenrostro's depositing of those checks in S&S's bank account with Citi is merely the vehicle by which Buenrostro furthered his fraud.  No case law exists that Citi has located that would place the burden on a bank to detect the fraud committed by its customer.  The cases say the exact opposite, a bank is not liable for its customer's fraud.  *See* cases cited, *supra*, §§ IV.A.1, IV.A.2.  Simply put, the liability for Buenrostro's fraud does not lie with Citi.  Citi had no obligation to detect, report, investigate or monitor Buenrostro's banking activity for the benefit of plaintiffs.  *See Marlin*, 2006 WL 2382325, at *7 (A bank's "obligation is not to roam through its customers looking for crooks and terrorists. By that act, banks do not become guarantors of the integrity of the deals of their customers."), *aff'd* 248 Fed. App'x 534 (5th Cir. 2007).  Under NRS 104.3202, Citi is shielded from the very type of fraudulent activity in which plaintiffs accuse Citi of being complicit.[5]

        **c.**        **NRS 104.3305**

*Third*, plaintiffs rely on NRS 104.3305, which statute involves, and is entitled, "Defenses and claims in recoupment."  Plaintiffs fail to allege facts sufficient to transform a statute setting forth a party's *defenses* into an *affirmative* duty owed.  By its express terms, this statute creates no liability or duty owed by Citi to plaintiffs.  The statute outlines claims and defenses that may be asserted by an obligor against a person attempting to enforce a negotiable instrument and applies only to actions to enforce the obligation of a party to pay an instrument.  *See* NRS 104.3305(1) (stating "the right to enforce the obligation of a party to pay an instrument is subject to the following . . ."); *see also Thompkins v. Mortg. Lenders Network USA, Inc.*, 209 Md. App. 685, 700, 61 A.3d 829, 838 (2013),

---

[5] Plaintiffs are incorrectly attempting to pigeonhole this case into falling under the UCC by characterizing Buenrostro's endorsements on the checks as fraudulent.  That characterization does not fit, given Buenrostro properly endorsed the checks and deposited them into the S&S account that was Buenrostro's account.  As alleged, this is not a case where Cit's account belonged to Stokes and Buenrostro forged Stokes' signature on checks properly belonging to Stokes and/or Injuryloans.

11

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    *aff'd sub nom.* 439 Md. 118, 94 A.3d 61 (2014) (explaining UCC § 3-202 governs defenses and
2    claims in recoupment that can be asserted by an obligor against a person attempting to enforce a
3    negotiable instrument). This statute outlines an obligor's—the person who made the check— rights
4    to force payment on the instrument or seek return payment if the obligor learns of the payee's fraud.
5    Plaintiffs are not the correct parties to assert this statute. The makers of the checks are the parties
6    who would have rights against Buenrostro if they believed Buenrostro defrauded them. *See Tharp v.*
7    *Mufflers of Kansas City, Inc.*, 912 S.W.2d 577, 580 (Mo. Ct. App. 1995) (explaining the maker of
8    the note could assert fraud in the inducement against the payee). The statute is inapplicable.

### d. NRS 104.3306

*Finally*, NRS 104.3306, titled "Claims to an instrument," states that a person taking an instrument (other than a holder in due course) "is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds." NRS 104.3306. This statute creates no liability in negligence or an independent claim where a noncustomer accuses the payee bank of negligently failing to prevent its customer's fraud to third parties. A Seventh Circuit case supports this interpretation in a case with nearly identical facts.

In *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397 (7th Cir. 2004), the named plaintiff, who was a victim of the bank customer's ponzi scheme, sued the payee bank for, among other things, violating UCC 3-306. The Seventh Circuit affirmed the district court's dismissal of the claim. There, customers of depository bank Union Planters Banks, N.A. convinced plaintiff they would invest money yielding a high rate of return. *Id.* at 398. The fraudulent bank customers made the same or similar promises to other individuals, thus creating their ponzi scheme. *Id.* After the checks were paid by the depository bank and cleared plaintiff's account, plaintiff learned the checks were deposited in a bank account other than the intended payee. *Id.* The depository bank had accepted the checks, despite plaintiff having stamped "for deposit only" at a different bank. *Id.* Plaintiff sued the depository bank for, among other claims, negligence based on UCC 3-306. *Id.* at 398-99. The district court dismissed plaintiff's claim.

…

52980724;6

The Seventh Circuit explained plaintiff's theory based on negligence against the depository bank could not lie based on UCC 3-306. First, the court refused to expand a general duty of care to non-customers. *Id.* at 399-400. Second, the Seventh Circuit explained that, even assuming a duty was owed to a non-customer, the bank is protected because nothing would arouse suspicion when a check is presented for deposit made payable to the bank's customer. *Id.* at 400.

The facts in *Conder*, in relevant substance, nearly identical to allegations plaintiffs assert against Citi, *i.e.*, that Citi is liable to plaintiffs (non-customers) for the purported fraud of Buenrostro (Citi's customer). As the Seventh Circuit acknowledge, even if the plaintiff could satisfy the duty requirement for negligence using UCC § 3-202, the claim would still fail due to lack of causation. The same applies here; Citi was not the party who caused plaintiffs' harm, Buenrostro did. *See id.* (explaining the detrimental effects of imposing liability on a bank who was not the actual cause of the plaintiff's harm) (citations omitted).[6]

The only UCC provision applying any duty of care to non-customers of a bank is found in UCC 3-420, codified in Nevada as NRS 104.3420, dealing with conversion. But as discussed below, plaintiffs do not have the requisite standing to assert a claim for conversion against Citi. *See P.M.F. Services, Inc. v. Grady*, 681 F. Supp. 549 (1988) (explaining "any negligence action by a noncustomer payee against a depositor bank is necessarily controlled by [UCC] Section 3-419[7] [and] [t]here is no reason to recognize an independent cause of action in negligence.").

…

---

[6] The *Conder* court explained the trouble with holding a bank liable on those facts as follows:

> The rule [UCC 3-202] isn't applicable to this case, and, given the enormous volume of check traffic moving through banks and the remedies that a drawer has against his own bank should that bank pay out the drawer's money in violation of its contractual and UCC duties, we doubt that Indiana is about to expand the rule into a general duty of care—especially in the face of the many cases that refuse in other settings to impose on banks a general duty of care toward persons who are not their customers and to whom therefore they have no contractual obligations.

*Conder*, 384 F.3d at 399.

[7] At the time this case was decided, UCC 3-419 was the predecessor statute to the current UCC 3-420, which revision limited the standing to assert a conversion claim as outlined above. The code changed in 1990. Nevada adopted the revised UCC in 1993. *See generally* NRS Chap. 104.

13

52980724;6

**B.     Plaintiffs Lack Standing to Assert Conversion against Citi**

The only UCC provision applying any duty of care to non-customers of a bank is found in UCC 3-420, codified in Nevada as NRS 104.3420, dealing with conversion. A claim for conversion in Nevada against a bank is expressly authorized by statute. Specifically, NRS 104.3420(1) states: "The law applicable to conversion of personal property applies to instruments." It further expands the definition of conversion by providing that "[a]n instrument is also converted if it is taken by transfer, other than a negotiation, from a person entitled to enforce or a bank makes or obtains payment with respect to the instrument from a person not entitled to enforce the instrument or receive payment." *Id.*

To the detriment of plaintiffs, however, the statute limits who may bring a conversion action against a bank. Under Nevada's UCC, "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument ***or a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to any agent or co-payee***." NRS 104.3420 (emphasis added).

Plaintiffs do not allege they received delivery of the Injury Loans checks they assert Citi converted. To the contrary, plaintiffs claim they were unaware Mr. Buenrostro stole the Injury Loans name or otherwise opened a Citi account for its benefit during the time of Stokes incapacitation. *See* FAC ¶ 21 (alleging Buenrostro sold loans belonging to Injury Loans while Stokes was incapacitated); ¶¶ 25, 31, 36 (alleging Stokes later became aware of Buenrostro's fraudulent scheme). Accordingly, they lack standing to sue Citi for conversion.

Courts have enforced this plain reading of UCC 3-420 to find a plaintiff lacks standing to assert a conversion claim absent delivery of the converted check. In *LDI Growth Partners LLC v. JPMorgan Chase Bank, N.A.*, plaintiff brought negligence and conversion claims against Chase. No. A136021, 2013 WL 5918414, at *2 (Cal. Ct. App. Nov. 5, 2013). Plaintiff LDI Growth Partners, LLC (**LDI**) is a factoring business who purchased the accounts receivable of Sola Systems, Inc. (**Sola**). *Id.* at *1. Third-party John Muir Health Systems (**Muir**) owed money to Sola. LDI notified Muir to send all payments owed to Sola to LDI until notified it otherwise, but Muir sent three payments to Sola by check payable to "LDI Growth Partners LLC For the [Account] of Sola

14

1   Systems." Sola deposited the three checks into its bank account with Chase. *Id.* During discovery,

2   LDI admitted Sola was not an agent authorized to receive checks directly from Muir. *Id*. at *1. The

3   district court ignored the admission in favor of finding Sola an agent under the factoring agreement

4   and, relevantly, finding LDI therefore had possession of the check sufficient to confer standing under

5   UCC 3-420. *Id.* at *2.

6         The appellate court in *LDI* reversed, finding LDI bound to its judicial admission Sola was not

7   its authorized agent. *Id.* at *3-4. Based on the lack of agency relationship, the court of appeals

8   found Chase was entitled to summary judgment on LDI's UCC 3-420 claim, explaining "if Sola,

9   which apparently received delivery of the checks directly from John Muir Health, was not acting as

10  an agent of LDI in receiving delivery of the checks, then LDI's conversion claim fails." *Id.* at *3, 5.

11        The fact pattern if *LDI* mirrors the facts of this case in relevant respects. Plaintiffs assert.

12  Buenrostro lacked authority to act on plaintiffs' behalf. *See* FAC ¶ 22 ("Buenrostro represented that

13  he had authorization to collect monies on behalf of Stokes, which was not true, and then he

14  appropriated the funds to himself."); *see also* FAC ¶ 21 ("While Stokes was thus incapacitated,

15  Buenrostro 'sold' loans belonging to Injury Loans to third parties, collecting proceeds to which he

16  was not entitled, but which belonged to Injury Loans and/or Stokes."). Like LDI, plaintiffs judicially

17  admit Buenrostro is not an authorized agent. Also like LDI, plaintiffs never allege they received

18  delivery of the supposed converted checks. Thus, they lack standing to maintain a conversion claim

19  under the plain language of UCC 3-420, codified in Nevada at NRS 104.3420.

20        The rationale behind this rule justifies the limitation of standing to certain categories of

21  persons to assert a conversion claim against a bank. In *American National Insurance Co. v.*

22  *Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008), the Seventh Circuit explained the plaintiff (the

23  party asserting the conversion claim against bank) was "confusing an interest in the funds backing

24  the checks with an interest in the checks themselves." 543 F.3d at 910. Despite the plaintiff in

25  *American National* being the "ultimate beneficiary of the funds . . . [t]he terms of the debt, however,

26  are tied to [the] ancillary contract, not the negotiable instruments in question." *Id.* The Seventh

27  Circuit therefore found the plaintiff lacked standing to assert conversion against the bank.

28  …

52980724;6

The heart of the dispute in this case is not the checks Citi paid, but rather the underlying dispute between Buenrostro and plaintiffs over who is entitled to the funds. Plaintiffs assert Buenrostro stole the name Injury Loans for the purpose of "appropriat[ing] the funds to himself." FAC ¶ 22. The checks deposited into Citi's account are merely tangential to the real issue in this case, which is whether Buenrostro appropriated funds to him that belonged to Injuryloans. Resolution of that ultimate question is not found by reference to the checks, but rather by the nature, scope and authority of the relationship between plaintiffs and Buenrostro. As in *American National*, plaintiffs' interest in the Citi checks "is a derivative claim to the funds, not a claim to the instrument themselves." *Amer. Nat'l*, 543 F.3d at 910.

In line with the foregoing, numerous courts further find a common law a conversion claim is displaced by the UCC. *See e.g., Mandolfo v. Mandolfo*, 281 Neb. 433, 447-48, 796 N.W.2nd 603, 608-09 (Neb. 2011) (finding no common law action for conversion can exist where plaintiff alleged the bank improperly allowed a person not entitled to payment of checks to receive the funds); *Gallagher v. Santa Fe Federal Employees Federal Credit Union*, 132 N.M. 552, 558, 52 P.3d 412, 418 (N.M. Ct. App. 2002) (finding the UCC displaces common law conversion where such claim is asserted against a bank for paying on a forged instrument); *Gress v. PNC Bank, N.A.*, 100 F. Supp. 2nd 289, 292 (E.D. Pa. 2000) (predicting the Pennsylvania supreme court would find a common law conversion claim displaced by the UCC);[8] *Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 113 (D.C. 2008) ("Virginia courts have consistently held that claims for negligence and conversion are preempted by the U.C.C.") (citing cases); *Midwest Feeders*, 114 F. Supp. 3d at 426 (denying non-customer's common law conversion claim because "[o]nce the checks were presented to the bank for deposit, the 'rights and responsibilities of the parties are determined by reference to the Mississippi [UCC].'") (citation omitted).

A claim for conversion against Citi fails as a matter of law because plaintiffs lack standing to raise it under the UCC, and a common law claim for conversion premised on a negotiable instrument is displaced by the UCC. The court should dismiss this claim with prejudice.

---

[8] The *Gress* court also would find common law negligence displaced by the UCC. *Gress*, 100 F. Supp. 2nd at 292.

52980724;6

### C.     Plaintiffs' Claim for Money Had and Received Should be Stricken or Dismissed

A party asking the court for leave to amend "must" attached the proposed amended pleading to the "motion seeking leave of the court to file an amended complaint." LR 15-1(a). Nothing in the rules permit a plaintiff to attach for the first time a proposed amended complaint to a reply brief. *See Eruchalu v. U.S. Bank, N.A.*, No. 2:12-cv-01264-RFB-VCF (Sept. 30, 2014) (citing *Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1273, n.3 (9th Cir. 1993)). Here, plaintiffs never received permission to file their version of the amended complaint attached for the first time to their reply brief. This cause of action should be stricken from plaintiffs' first amended complaint.

The claim also does not survive on its merits. "A cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1455 (Cal. App. 2013) (citation and internal quotes omitted). Plaintiffs fail to allege any that Citi "used" the deposited money for its own purpose. Nor can they. Citi is a mere depository bank; the funds belonged to S&S. This claim should be dismissed on its merits.

### D.     Plaintiffs' Request for Punitive Damages Should be Stricken or Dismissed

"Punitive damages are not designed to compensate a party, but are awarded 'for the sake of example and by way of punishing the defendant.'" *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1052 (Nev. 2000). To recover punitive damages, a plaintiff must prove a defendant acted with "oppression, fraud or malice." NRS 42.005(1).

Plaintiffs request punitive damages against Citi on two of their claims: conversion and money had and received. FAC ¶¶ 184, 196. Neither claim is an intentional tort to give rise to availability of punitive damages. For punitive damages to be available, a defendant must act with a "culpable state of mind" and the mental state "must exceed mere recklessness or gross negligence." *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 254 (Nev. 2008).

Under plaintiffs' conversion claim, the sole allegations against Citi are "Citi committed a distinct act of dominion wrongfully exerted over plaintiffs' property by depositing the checks payable to plaintiffs into the account of another, and such "actions were done in defiance of plaintiffs' right to the property." FAC ¶¶ 181, 182. "Conversion is an act of general intent, which

1  does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."

2  *Evans v. Dean Witter Reynonds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000).  The allegations

3  are devoid of any conduct giving rise to "oppression, fraud or malice.  NRS 42.005(1); *Bonavito v.*

4  *Nevada Property 1, LLC*, No. 2:13-cv-00417-JED-CWH, 2014 WL 1347051 (D. Nev. Apr. 2, 2014)

5  ("Punitive damages are a remedy, not a claim, but a plaintiff must still plead the facts to support an

6  award of punitive damages to maintain a prayer for them in his complaint and to pursue them at

7  trial.").  Plaintiffs' request for punitive damages should be stricken.

8  The same applies to plaintiffs' money had and received claim.  "A cause of action for money

9  had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain

10 sum for money had and received by the defendant for the use of the plaintiff." *Avidor*, 212 Cal. App.

11 4th at 1455 (citation and internal quotes omitted).  "The claim is viable wherever one person has

12 received money which belongs to another, and which in equity and good conscience should be paid

13 over to the latter." *Id.* (same).  Punitive damages are unavailable. *Steiner v. Rowley*, 35 Cal. 2d 713,

14 720 (1950) (dismissing punitive damages request because "[a]n action for tort in which exemplary

15 damages are sought is inconsistent with one for money had and received.").

### V. CONCLUSION

17 For the foregoing reasons, Citi requests the court dismiss plaintiffs' claims for

18 negligence/negligence per se, conversion, violations of UCC, and money had and received with

19 prejudice.  Additionally, or alternatively, Citi requests this court dismiss plaintiffs' claim for money

20 had and received because they never obtained leave to bring it.  And, to the extent plaintiffs' claims

21 for conversion and money had and received are not dismissed outright, Citi requests plaintiffs' prayer

22 for punitive damages on these claims be dismissed.

23 DATED May 22, 2020.        **AKERMAN LLP**

*/s/ Donna M. Wittig*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
1635 Village Center Circle, Suite 200
Las Vegas, Nevada  89134
*Attorneys for defendant Citibank, N.A.*

18

52980724;6