# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| INJURYLOANS.COM, LLC; ADAM STOKES, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| SERGIO BUENROSTRO, *et al.*, | ) ) |
| Defendants. | ) ) |

Case No.: 2:18-cv-01926-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 97), filed by Plaintiffs/Counter-Defendants Injury Loans, LLC ("Injury Loans") and Adam Stokes ("Stokes") (collectively, "Plaintiffs"), regarding Defendant/Counterclaimant Sergio Buenrostro's ("Buenrostro's") Amended Counterclaim, (ECF No. 96). Buenrostro filed a Response, (ECF No. 111), and Plaintiffs filed a Reply, (ECF No. 116).

Also pending before the Court is the Motion to Dismiss, (ECF No. 127), filed by Defendant Citibank, N.A. ("Citi"). Plaintiffs filed a Response, (ECF No. 132), and Citi filed a Reply, (ECF No. 139).

For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion to Dismiss and **GRANTS in part** and **DENIES in part** Citi's Motion to Dismiss.

## I.    BACKGROUND

This case arises from allegations that Buenrostro misappropriated proceeds of Plaintiffs' business. (*See generally* First Am. Compl. ("FAC"), ECF No. 110). Stokes is the owner of Injury Loans, a limited liability company that finances personal injury lawsuits in exchange for loan reimbursement and an interest in subsequent recovery. (*Id.* ¶¶ 14–16). Plaintiffs employed Buenrostro as an administrator for Injury Loans. (*Id.* ¶ 17).

1    The events giving rise to this action began in 2017 after Stokes sustained a traumatic

2  brain injury that incapacitated him for several months. (*Id.* ¶ 18).  Plaintiffs allege that

3  Buenrostro was not authorized to handle funds for Injury Loans within the scope of his

4  employment. (*Id.* ¶¶ 46–47).  However, Plaintiffs contend that, "[w]hile Stokes was []

5  incapacitated, Buenrostro 'sold' loans belonging to Injury Loans to third parties, intercepted

6  checks from Plaintiffs['] mail box [sic], deposited these checks with Defendant Citigroup and

7  collected proceeds to which he was not entitled, but which belonged to Injury Loans and/or

8  Stokes." (*Id.* ¶ 21).  Buenrostro allegedly misrepresented his authority to third parties to sell

9  loans and collect loan proceeds. (*Id.* ¶¶ 21–23).

10    Plaintiffs allege that Buenrostro facilitated his scheme in a number of ways.  First,

11  Buenrostro allegedly drafted a sham profit-sharing contract between himself and Stokes and

12  forged Stokes's signature thereon. (*Id* ¶ 24(a)).  Second, Buenrostro allegedly forged Stokes's

13  endorsement on checks made out to Injury Loans. (*Id.* ¶ 24(b)).  Third, Buenrostro allegedly

14  formed a sham LLC, S&S Marketing Consulting ("S&S"), which he registered under the

15  fictitious firm name "Injury Loans." (*Id.* ¶ 24(c)).  Buenrostro allegedly opened a bank account

16  for S&S at Citi where he would deposit checks made out to Injury Loans. (*Id.* ¶ 24(d)).

17  Buenrostro allegedly represented to others that he shared the bank account with Stokes and/or

18  "opened it with Stokes'[s] authorization by using Citibank documents purporting to bear

19  Stokes'[s] signature." (*Id.* ¶ 24(f)).

20  **II.    LEGAL STANDARD**

21     **A. 12(b)(6)**

22    Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

23  that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*

24  *Comm'n*, 720 F.3d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule

25  12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not

give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgement. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgement. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B.  Motion to Strike

Pursuant to Rule 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The district court may alternatively strike pleadings under its "inherent power over the administration of its business.  It has inherent authority to regulate the conduct of attorneys who appear before it [and] to promulgate and enforce rules for the management of litigation . . . ." *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (citations omitted) (emphasis added).

## III.  DISCUSSION

The Court first addresses Citi's Motion to Dismiss the Complaint before turning to Plaintiffs' Motion to Dismiss Buenrostro's Amended Counterclaim.

### A.  Motion to Dismiss the First Amended Complaint, (ECF No. 127)

Plaintiffs argue that Citi bears liability for depositing Plaintiffs' checks into Buenrostro's account for S&S.  The First Amended Complaint asserts claims against Citi for: (1) Negligence/Negligence Per Se; (2) Injunctive Relief; (3) Declaratory Relief; (4) Conversion; (5) Violations of the UCC; and (6) Monies Had and Received. (FAC ¶¶ 66–94, 159–196, ECF No. 110).  Citi moves to dismiss the First Amended Complaint for its failure to state a claim upon which relief can be granted. (*See* Citi's Mot. Dismiss ("MTD"), ECF No. 127).  Citi also

argues that Plaintiffs' claim for money had and received should be stricken. (*Id.* 17:2–8).   The Court addresses each claim below.

### 1. Negligence/Negligence Per Se/UCC Violations[1]

Plaintiffs attempt to assert several negligence theories, which differ only in the alleged source of duty Citi owed to Plaintiffs.[2] (*See* FAC ¶¶ 66–94).  Plaintiffs contend that Citi owed them a duty of care arising in common law. (*Id.* ¶ 88).  Plaintiffs also argue that Citi engaged in negligence per se by failing to comply with the terms of the Patriot Act, the Bank Security Act, and associated federal Know Your Customer and Customer Due Diligence regulations. (*Id.* ¶¶ 67, 72–79, 86–87).  Finally, Plaintiffs contend that Citi engaged in negligence per se by failing to comply with several provisions of UCC Article 3 as adopted by the Nevada Legislature, specifically NRS 104.3110, 104.3202, 104.3305, and 104.3306. (*Id.* ¶¶ 67, 90, 187).  The Court dismisses each theory of negligence with prejudice.

Citi owes no common law duty of care to Plaintiffs.  Generally, a bank's duty of care arises by contract and is therefore limited to its customers. *See Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 616 (7th Cir. 2001) ("But the duty of care is one implied into the agreement between bank and depositor; it is a duty, in other words, that depends upon the existence of a contract.").  To the extent Citi could owe a common law duty of care to Plaintiffs, the duty is supplanted by the UCC.[3]  The UCC preempts causes of action "displaced

---

[1] The Complaint references the above-mentioned UCC sections as bases for duties in negligence and independent causes of action. (*Compare* FAC ¶ 90) (asserting that Citi engaged in negligence per se by violating NRS 104.3110, 104.3202, 104.3306) (*with id.* ¶¶ 185–189) (alleging the same sections, in addition to NRS 104.3305, provide a cause of action for "Violations of UCC").  The Court groups its analysis of the claims as Plaintiffs offer no distinction between their pure statutory claims and the related negligence per se claims.  Both allege that the UCC sections create duties that Citi breached, and the Court therefore treats them identically.

[2] The alleged breach is Citi's failure to conduct due diligence when depositing the checks in favor of Buenrostro. (FAC ¶¶ 69–71, 90).

[3] Even if the UCC does not displace a negligence action against a depositary bank, given that Citi owes no duty to Plaintiffs because Plaintiffs are not Citi customers, Plaintiffs' common law negligence theory against Citi is not viable. *Mut. Serv. Cas. Ins. Co.*, 265 F.3d at 616.

by provisions of this code." *See* NRS 104.1103(2).  There are two UCC provisions that create causes of action by an employer against a depositary bank to recover instruments fraudulently endorsed by an employee.  NRS 104.3405 creates a cause of action in negligence against a depositary bank wherein an employee entrusted with responsibility over the instrument fraudulently endorses the instrument. *See* NRS 104.3405(2) and cmt. 1.  Alternatively, if the employee acted without responsibility, and the employer was not himself negligent in safeguarding the check, then the depositary bank may be liable for conversion. *See* NRS 104.3420 (authorizing conversion theory for negotiable instruments); *see also* NRS 104.3405 cmt. 3 case no. 1 (explaining that a negligence action does not lie against the depositary bank where an employee did not have authorization to receive a check he stole and deposited); NRS 104.3406 (explaining employers' potential comparative negligence).  Where, as here, "a collecting bank . . . cashes a check on the unauthorized indorsement of the payee[, that bank] is liable to the payee; . . . [but] it is through an action in conversion, not negligence." *Gil v. Bank of Am., N.A.*, 42 Cal. Rptr. 3d 310, 314 (Cal. Ct. App. 2006) (analyzing corollary California statute, Cal. Comm. Code § 3420(b)); *see also Comm. Standard Ins. Co. v. Tab Constr., Inc.*, 583 P.2d 449, 451 (Nev. 1978) (explaining that Nevada courts look to California law where Nevada case law is silent).

Plaintiffs' negligence per se theories fare no better.  Under a theory of negligence per se, a plaintiff must allege that (1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages. *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997).  The statutes are not intended to prevent injuries like Plaintiffs' because the statutes are not preventative in nature; rather, Congress enacted the statutes "to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory investigations."

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 U.S. Dist. LEXIS 129032, 2019 WL 3503109, at \*6 (C.D. Cal. July 9, 2019) (quoting *Martinez-Colon v. Santander Nat'l Bank*, 4 F. Supp. 2d 53, 57 (D. Puerto Rico 1998)).  Courts appear to have held unanimously that there is no private right of action under the Bank Security Act, Patriot Act, and associated regulations either independently or under a theory of negligence per se. *Id.* (collecting cases).

Likewise, there is no indicia that the provisions of the Nevada UCC Plaintiffs cite as sources of duty authorize rights of action.  NRS 104.3110 identifies how banks determine to whom an instrument is initially payable, which may be relevant to competing claims to an instrument but does not itself authorize a cause of action. *See Crystaplex Plastics v. Redevelopment Agency*, 92 cal. Rptr. 2d 197 (Cal. Ct. App. 2000); *Joffe v. United Cal. Bank*, 190 Cal. Rptr. 443, 450 (Cal. Ct. App. 1983) (explaining the former corollary California provision's relevance to a breach of warranty claim).  NRS 104.3202 indicates when a negotiation of an instrument is effective and may be subject to rescission.  As Plaintiffs do not state a claim to recission of the instruments, there is no cognizable explanation for how the statute applies here.  NRS 104.3305 describes defenses and claims in recoupment against an obligor.  Here, Plaintiffs are not asserting claims against the obligors of the checks; rather, they primarily assert claims against Buenrostro and S&S, the depositors, and Citi, the depositary bank.  NRS 104.3306 indicates that persons taking an instrument are subject to claims for the proceeds thereof, but it is "silent as to the types of claims" allowed or "the elements of such claims," and the provision itself does not create a duty in negligence. *See Mut. Serv. Cas. Ins. Co.*, 265 F.3d at 621.  Thus, as Plaintiffs have failed to assert a cognizable theory of negligence, and it appears no set of facts would demonstrate a plausible negligence claim against Citi, the Court dismisses the negligence and "violations of UCC" claims with prejudice.

//

### 2.   Conversion

Plaintiffs contend that Citi is liable for conversion under NRS 104.3420, which extends common law conversion involving personal property to negotiable instruments like checks. (FAC ¶¶ 176–184).  Citi moves to dismiss the claim, arguing only that Plaintiffs lack standing because NRS 104.3420(1) expressly exempts claims by a payee "who did not receive delivery of the instrument either directly or through delivery to any agent[.]" (MTD 14:10–14) (quoting NRS 104.3420).  Citi contends that because Plaintiffs did not receive the checks, and Plaintiffs allege Buenrostro acted outside the scope of his agency when he took possession of the checks, Plaintiffs are payees who did not receive delivery of the checks. (*Id.* 14:15–15:27).

Citi's argument is unavailing.  A plaintiff takes possession of an instrument if it is delivered to his mailbox. *See* NRS 104.3420 cmt. 1 ("The payee receives delivery when the check comes into the payee's possession, as for example when it is put into the payee's mailbox.").  Here, Plaintiffs allege that Buenrostro took the checks from Plaintiffs' mailbox before depositing them into the S&S account with Stokes's forged endorsement. (*See* FAC ¶¶ 178–79).[4]  Accordingly, Plaintiffs have standing to assert a claim for conversion against Citi, and the Court therefore denies dismissal of the claim. *See* NRS 104.3420 cmt. 1 (explaining that the statute "covers cases in which a depositary or payor bank takes an instrument bearing a forged indorsement.").

### 3.   Money Had and Received

Plaintiffs' First Amended Complaint raises a common law claim to money had and received. (FAC ¶¶ 190–96).  Citi requests that the Court strike the claim. (MTD 17:1–14).  Citi

---

[4] The instant claim has a similar defect to the Money Had and Received claim discussed below: Plaintiffs failed to allege essential facts in the proposed First Amended Complaint attached to the Motion to Amend and instead raised the allegations in the version of the proposed First Amended Complaint appended to its Reply brief. However, unlike the claim for Money Had and Received, Citi did not move to strike the claim, and the time to so move has now passed. *See* Fed. R. Civ. P. 12(f)(2) (indicating a motion to strike is timely "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.").

notes that pursuant to Local Rule 15-1(a), Plaintiffs attached a proposed First Amended Complaint to their Motion to Amend. (*See* Mot. Am., ECF No. 66).  However, in their Reply brief in support of the Motion to Amend, Plaintiffs submitted a *new* proposed Amended Complaint without leave of court. (*See* Ex. 1 to Reply Mot. Am., ECF No. 91-1).  The Magistrate Judge granted the Motion to Amend, which—pursuant to the Local Rules— authorized Plaintiffs to submit the proposed Amended Complaint appended to their original Motion, but not the one attached to their Reply. (Order, ECF No. 105); *see* LR 15-1 ("the moving party must attached to the proposed amended pleading to a motion seeking leave of the court to file an amended pleading . . . . [i]f the court grants leave to file an amended pleading, and unless the court orders otherwise, the moving party must then file and serve the amended pleading.").  Plaintiffs instead filed the proposed Amended Complaint attached to their Reply, which contained the present claim for money had and received; whereas, the proposed amended complaint attached to the Motion to Amend did not. (*Compare* FAC); (Ex. 1 to Reply Mot. Am. 91-1); (*with* Ex. 3 to Mot. Am., ECF No. 66-3).  Plaintiffs' tardily proposed amendment did not provide Citi a chance to respond to the new allegations.  The Court finds good cause to grant Citi's request to strike the claim as Plaintiffs never received leave of court to present the claim. *See, e.g.*, *Pike v. Hester*, No. 3:12-cv-00283-RCJ-VPC, 2014 U.S. Dist. LEXIS 150527, 2014 WL 5410803, at *5 n.3 (D. Nev. Oct. 23, 2014) (granting the Motion to Strike because filing a different version of the document from the one the court approved "ignore[d] the confines of the Court's leave to amend."); *cf. Peter D Holdings, LLC v. Wold Oil Props., LLC*, No. 17-CV-212-KHR, 2018 U.S. Dist. LEXIS 234029, 2018 WL 10399007, at *1 (D. Wyo. Oct. 4, 2018) (granting leave to amend because a complaint adding a new party, but refraining from changing the allegations therein, was not a "material difference" to the proposed amended complaint).

//

4.  <u>Punitive Damages</u>

In the First Amended Complaint, Plaintiffs seek punitive damages against Citi based under their conversion and money had and received claims. (FAC ¶¶ 184, 196).  Citi argues that the requests for punitive damages should be stricken or dismissed because neither underlying claim is an intentional tort. (MTD 17:20–18:15).  As the Court has stricken the claim for money had and received, the Court addresses whether Plaintiffs have adequately alleged a basis for punitive damages under their conversion theory.

In Nevada, punitive damages may only be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.005(1).  "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." NRS 42.001(4).  "'Fraud' means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person." NRS 42.001(2).  "'Malice, express or implied' means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." NRS 42.001(3).  "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1).  "[Conscious disregard] plainly requires evidence that a defendant acted with a culpable state of mind. . . . [A]t a minimum, [it] must exceed mere recklessness or gross negligence." *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Here, Plaintiffs have alleged that Citi engaged in tortious conduct, but not conduct rising to the level of oppression, fraud, or malice. (*See* FAC ¶¶ 176–183).  Each standard requires some degree of intentional or willful conduct, but Plaintiffs do not allege that Citi knew of Buenrostro's scheme and assented to his intent as a co-conspirator. (*Id.*).  Accordingly, given

that Plaintiffs have not pleaded a factual basis in support of punitive damages, the Court

dismisses Plaintiffs' request for the relief without prejudice.

### 5.   Declaratory/Injunctive Relief

Plaintiffs assert claims to declaratory and injunctive relief against all Defendants. (FAC

¶¶ 159–175).  Citi notes that the claims are "non-substantive," and seek only a particular

remedy. (*See* MTD at 5 n.2).  However, Citi does not raise reasons to dismiss the claims. (*Id.*).

If the claims provided the only grounds for Citi to remain a party to the action, the Court would

need to address whether they should be dismissed against Citi.  Given that the Court finds

Plaintiffs' conversion claim may proceed against Citi, the Court need not address the nature of

the claims.  Citi will remain a party to the action irrespective of whether the declaratory and

injunctive relief claims should be treated as independent claims to relief.

### B.  Motion to Dismiss Buenrostro's Counterclaim, (ECF No. 97)[5]

On May 1, 2019, Buenrostro asserted a Counterclaim against Plaintiffs, which raised an

abuse of process claim premised upon Plaintiffs having allegedly initiated this case to distract

from law enforcement investigations into their conduct. (*See* Answer, ECF No. 19).  The Court

dismissed the Counterclaim without prejudice. (*See* Order, ECF No. 79).  In its Order, the

Court explained:

> Courts applying Nevada law have consistently held that the mere filing of a
> complaint is insufficient to establish abuse of process. *McClatchy*, 622 F. Supp. at
> 752; *Ging v. Showtime Entertainment, Inc.*, 570 F. Supp. 1080, 1083 (D. Nev.
> 1983) (finding that, under Nevada law, the initiation of a lawsuit does not
> constitute the tortious act required as one of the elements of abuse of process);

---

[5] Buenrostro asks the Court to certify questions regarding his abuse of process claim to the Nevada Supreme
Court, asserting that it must be true that commencement of an action upon fabrications provides a right of action.
(Resp. Mot. Dismiss Am. Counterclaim 9:15–14:26, ECF No. 111).  The Nevada Supreme Court may answer
questions of law "which may be determinative of the cause then pending in the certifying court and as to which it
appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this
state." Nev. R. App. P. 5.  Here, there is precedent regarding abuse of process claims, but Buenrostro is not
satisfied with the clarity of its contours.  Accordingly, the Court declines to certify Buenrostro's proposed
questions to the Nevada Supreme Court.

*Rashidi v. Albright*, 818 F. Supp. 1354, 1358–59 (D. Nev. 1983) (same); *Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry and Tile Contractors Ass'n of Southern Nevada*, 1990 U.S. Dist. LEXIS 18520, at *28 (D. Nev. 1990) ("Plaintiffs must include some allegation of abusive measures taken after the filing of the complaint in order to state a claim."). By contrast, examples of where abuse of process has occurred include a party filing numerous motions solely for the purpose of coercing a settlement; or a plaintiff initiating a lawsuit without adequate investigation beforehand, without seeking necessary evidence, and knowing that there is no basis for the lawsuit. *See McClatchy*, 622 F. Supp. at 752; *Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980), *abrogated on other grounds by Ace Truck & Equip. Rentals, Inc. v. Kahn*, 746 P.2d 132 (Nev. 1987).

To state a claim for abuse of process, the claimant must allege two elements: (l) an ulterior purpose by the opposing party other than resolving a legal dispute, and (2) a willful act in the use of the legal process that is "not proper in the regular conduct of the proceeding." *Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1990). Liability for abuse of process is not imposed for "the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (Second) of Torts § 682 cmt. a; *Lamantia v. Redisi*, 38 P.3d 877, 879 n.8 (Nev. 2002) (citing the Restatement); *see also Golden v. Dungan*, 97 Cal. Rptr. 577, 581 (Cal. Ct. App. 1971) (affirming dismissal of abuse of process claim based on initiation of an action). Put differently, an ulterior purpose is not alone sufficient; the claimant must allege facts plausibly indicating how the defendant willfully misused legal process to further the improper purpose. *See Land Baron Invs. Inc. v. Bonnie Springs Family Ltd.*, 356 P.3d 511, 519 (Nev. 2015) ("the claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose."); *see, e.g.*, *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993) (allegedly attempting criminal prosecution to procure defendant's resignation); *Bull*, 615 P.2d at 960 (failing to investigate underlying facts before initiating an action, and then maintaining the action despite insufficient evidence, in order to procure a nuisance settlement); *Nev. Credit Rating Bureau v. Williams*, 503 P.2d 9, 12 (Nev.

1972) (filing an excessive attachment in an attempt to force payment of a claim instead of obtaining security for debt); *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985) (summarizing *Bull* by explaining "It was the actions which the lawyer took (or failed to take) after the filing of the complaint which constituted the abuse of process, and not the filing of the complaint itself, which constituted the tort[.]").

Buenrostro has alleged Plaintiffs' ulterior purpose.  Buenrostro contends that Plaintiffs have "maintained this suit on false pretense to deflect [their] own misconduct onto a convenient scapegoat, in an attempt to misdirect or otherwise confuse the myriad of ongoing investigations and suits against Stokes [and Injury Loans]." (Am. Counterclaim ¶¶ 10–11, ECF No. 96).  The allegation satisfies the first element of the claim.

However, Buenrostro's allegations are legally insufficient to demonstrate use of process outside the scope of an ordinary legal proceeding to distract from the purported investigations. The bulk of Buenrostro's allegations concern Plaintiffs' filing of the Complaint and the allegations therein, but not procedural shenanigans taken to accomplish Plaintiffs' allegedly improper purpose after initiating this action. (*See, e.g.*, Am. Counterclaim ¶¶ 15–23, 26–31 35, 37) (alleging that many of Plaintiffs' allegations about Buenrostro are factually inaccurate).  If the allegations in the Complaint are false, Buenrostro may be able to allege a speech-based tort, but a complaint's factual allegations are not "process" actionable under an abuse of process theory. *Cf. Laxalt*, 622 F. Supp. at 752.

Buenrostro's Amended Counterclaim contains two allegations concerning Plaintiffs' supposed abuse of process: Plaintiffs' alleged witness intimidation and their initiation of duplicative actions in state court. (*Id.* ¶¶ 45–59).  The former merely asserts that Plaintiffs have intimidated witnesses in this action, which is a legal conclusion and not a plausible factual allegation under Rule 12(b)(6).  The latter also fails to support a cause of action for abuse of process because Buenrostro's non-conclusory factual allegations again concern the initiation of

suits but not improper uses of process post-filing.  Even if there were sufficient factual allegations about the process used by Plaintiffs, Buenrostro has not alleged the connection between Plaintiffs' improper use of process and their allegedly unlawful purpose.  Accordingly, the Amended Counterclaim is dismissed without prejudice.  As Buenrostro has been provided leave to amend but has failed to allege facts that would support an abuse of process theory, and further amendment appears likely futile, the Court declines to again provide leave to amend. Should Buenrostro be able to state a plausible claim, he may move to amend so that the Court may review any proposed amendment before providing leave to file.

## IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss, (ECF No. 97), is **GRANTED**.

**IT IS FURTHER ORDERED** that Citi's Motion to Dismiss, (ECF No. 127), is **GRANTED in part** and **DENIED in part** consistent with the foregoing.

Dated this 25  day of March, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT